IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TERRY K. OFORI,                    )
    Plaintiff,                     )            Civil Case No. 7:20-cv-00345
v.                                 )
                                   )            By: Elizabeth K. Dillon
LESLIE J. FLEMING, *et al.*,       )                United States District Judge
    Defendants.                    )

**MEMORANDUM OPINION**

Plaintiff Terry K. Ofori, a prisoner in the custody of the Virginia Department of

Corrections ("VDOC") proceeding *pro se*, filed a civil rights complaint asserting numerous

claims against more than thirty defendants.  The court screened and sua sponte dismissed some

of his claims, and severed the others into separate lawsuits.  This case involves only Count VIII

of Ofori's amended complaint,[1] which is titled "Retaliation by Officials."  That Count does not

contain separately numbered claims, but defendants interpret it as asserting eighteen different

retaliation claims, and Ofori has not disputed their identification of his claims.   All of the

defendants, with the exception of defendant Wroten and possibly defendant Jones,[2] have moved

to dismiss all but Claims 10 and 18.  (Dkt. No. 26.)   As to those two claims, defendants Combs,

J. Stallard, Hughes, Daniel, and Stout have filed a motion for summary judgment (Dkt. No. 32),

which will be addressed by a separate opinion and order.  The motion to dismiss and other

---

[1] In the case from which this case was severed, the document docketed here as a complaint was actually Ofori's amended complaint.  (Dkt. No. 1.)  Then, after this case was created, Ofori moved to amend to dismiss a defendant and to add additional allegations concerning the fines imposed for his disciplinary convictions, which the court granted.  (Dkt. Nos. 7, 8.)  Defendants refer to the originating complaint in this case (minus the dismissed claim) as the amended complaint, and the court also does so.

[2] As discussed *infra* at Section II-C, Wroten has not yet been served.  The court dismisses the sole claim against him—Claim 17—pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It appears that Jones, described by Ofori as the "law librarian," was not served, either.  (Dkt. No. 21 (unexecuted summons returned).)  But counsel filed the brief in support of his motion on behalf of Jones on the docket, although Jones is not mentioned in the text of the brief.  (*See* Dkt. No. 27.)  Regardless of his status (as either served or unserved, represented or unrepresented), the only claims against Jones are being dismissed.  Thus, like Wroten, he will be dismissed as a defendant.

motions pending before the court will be addressed herein.

Ofori initially failed to file a timely response to the motion to dismiss, and the case was dismissed, but he subsequently moved for reconsideration, which the court granted. Ofori has since filed a "response in opposition" to the motion to dismiss (Dkt. No. 45), but the response simply states that he has corrected the alleged deficiencies pointed out in the motion to dismiss through his proposed second amended complaint, which he submitted simultaneously (Dkt. No. 44). The court, however, denied him leave to amend.[3] (May 21, 2021 Order, Dkt. No. 48.) Instead, the court stated that it would consider his filing as a supplemental response to the motion to dismiss and as a response to defendants' motion for summary judgment. Its allegations, however, would not be considered part of the amended complaint. (*Id.*)

Ofori also filed a separate "supplemental" opposition to the motion to dismiss. (Dkt. No. 56.) In it, he acknowledges that some of his claims are unaccompanied by all their supporting factual recitations, but he argues that the court should excuse that both because: (1) a "retaliation conclusion" is warranted from the chronology of events recited in his amended complaint; and (2) a retaliatory state of mind typically is not susceptible to proof by direct evidence. (*Id.* at 2.)[4]

For the reasons set forth herein, the motion to dismiss will be denied in part and granted in part. Specifically, it will be denied as to Claim 1 against defendant Roberts, Claim 7 against J.

---

[3] In denying Ofori's motion to amend his complaint, the court first noted that he had already amended his complaint once and it already consisted of multiple documents. (May 21, 2021 Order at 3, Dkt. No. 48.) It noted that his proposed amended complaint was not a stand-alone document, but it referenced and attempted to incorporate paragraphs from the original complaint in the case, exhibits, and amendments. The court further noted that many of his allegations stemmed from events in 2017, and defendants would be prejudiced by allowing new allegations at this stage in the case, particularly since a summary judgment motion had already been filed on some claims. (*Id.*)

[4] Ofori's supplemental response also argues that defendants have not produced any evidence to address their reasons for said events. Because the court is ruling at the motion to dismiss stage, it is true that the court does not consider anything other than the allegations of the amended complaint. But those allegations still must allege *facts* that make it plausible that Ofori could state a retaliation claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough that Ofori says the acts were taken for retaliatory reasons.

Stallard and Hughes, and Claim 13 against D.C. Mullins, who was erroneously not included as a defendant when this case was created, but he will now be added.[5]  It will be granted as to the remainder of the claims for which dismissal is sought.  The court also addresses herein the other pending motions in the case, except for the summary judgment motion.

## I.   DISCUSSION

All of Ofori's claims arise from alleged events at Wallens Ridge State Prison (WRSP), where Ofori was housed at all relevant times.  Because the facts offered in support of Ofori's retaliation claims are limited and because there are so many claims to discuss, the court will not set forth his allegations separately here but instead will discuss them in the context of addressing each claim.  Before turning to the claims, however, the court sets forth the standard governing the motion to dismiss and the general law governing retaliation claims.

### A.  Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences,

---

[5]  D.C. Mullins was named as a defendant in Ofori's amended complaint in Count VIII and identified as Agent M.  (*See* Am. Compl. 5, Dkt. No. 1.)  When the case was severed, however, he was mistakenly not included as a defendant.  Ofori noted a similar omission with regard to defendant Wroten, but he never called the court's attention to the fact that Mullins was not included.  Nonetheless, given that the court finds Ofori has stated a claim against Mullins, the court will direct the Clerk to notify Mullins of this action.

unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302 (citation omitted). *Pro se* complaints are given a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

### B. Retaliation

To succeed on each of his retaliation claims, Ofori must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (*Martin II*) (citing *Martin v. Duffy*, 858 F.3d 239, 249) (4th Cir. 2017)) (alterations omitted).

It appears that, in general terms, Ofori is alleging that each of the supposedly retaliatory actions was taken against him because he frequently files informal complaints and grievances within VDOC's grievance system. Although he does not allege that fact within each claim, it is a fair inference from the allegations in Count VIII overall. As to the first element, prisoners have a "First Amendment right to be free from retaliation for filing a grievance." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (*Booker II*). So, Ofori's filing of grievances and informal complaints constitutes activity protected by the First Amendment, as defendants acknowledge. (Mem. Supp. Mot. Dismiss 14, Dkt. No. 27 (citing *Booker II*)).

With regard to the second element of a retaliation claim, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Each of the allegedly retaliatory actions will be discussed in context to determine if they are sufficiently adverse to support a

retaliation claim.  Although the standard is an objective one, rather than subjective, the fact that a plaintiff has not, in fact, been deterred from continuing in his protected activity is a factor that can be considered.  *Id.* at 500 (noting that, although it is not dispositive, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity").  Here, by his own admission, Ofori continues to file complaints and grievances (in addition to lawsuits).  Thus, while not dispositive as to the second factor, this fact is relevant in determining whether the second element has been adequately alleged.  *See id.*

The third element of each claim requires a plaintiff to show a causal causation between the First Amendment activity and the alleged adverse action.  In the prison context, the Fourth Circuit has directed district courts to apply the "same-decision test" of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), in determining the causation element.  *Martin*, 977 F.3d at 299.

Under that test, a plaintiff must first put forth evidence to show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action."  *Id.* at 300.  At a minimum, he must allege facts showing both that the defendant was aware the plaintiff had engaged in protected activity and "some degree of temporal proximity to suggest a causal connection."  *Constantine*, 411 F.3d at 501.  If plaintiff shows that the protected conduct motivated the defendant or was a substantial factor in the defendant's decision, then the burden shifts to the defendant to prove a permissible basis for taking the adverse action.  *Martin II*, 977 F.3d at 299.  "'If the defendant fails to carry that burden, the inference is that 'but for' causation . . . has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant.'"  *Id.* at 299 (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)).

Notably, though, the Fourth Circuit has cautioned that courts must treat an inmate's claim of retaliation by prison officials "with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

### C.  Ofori's Claims[6]

Before turning to his individual claims, the court notes that, overall, Ofori's amended complaint resembles the complaint in *Cochran*, where the appellate court affirmed the dismissal of all the retaliation claims.  The Fourth Circuit described it as follows:

> Cochran's complaint charged that every single action by prison officials represented either a conspiracy or a retaliation, including "using the inmate who stabbed [Cochran] as a pawn," "punish[ing] [Cochran] with a long term segregation assignment," and "permitt[ing] institutional documents to be falsified." This extended litany of conspiratorial activity casts serious doubts on Cochran's claims. The assortment of vague accusations also fails to demonstrate, as is required, that each retaliatory act violate some constitutional right of an inmate or constitute punishment for the exercise of a constitutional right.

*Cochran*, 73 F.3d at 1317–18 (citing *Adams*, 40 F.3d at 75).

Furthermore, as discussed in more detail as to his individual claims, Ofori repeatedly states that specific actions were taken in retaliation for his engaging in protected activity or that officers were conspiring to retaliate against him, but he offers precious few *facts* from which a reasonable inference could be drawn that the officers were taking any specific action with a

---

[6]  The two claims not listed here, and for which defendants do not seek dismissal, are: (1) Claim 10, which alleges that on December 21, 2017, Daniel, at the instruction of J. Stallard and Hughes, searched Ofori's cell and made derogatory comments about Ofori to his cellmate. The defendants later had Ofori falsely charged with an unspecified disciplinary infraction, which was subsequently dismissed.  (Am. Compl. ¶ 131); and (2) Claim 18, which alleges that on November 21, 2018, Combs, J. Stallard, and Stout caused Ofori to receive a false disciplinary charge for tampering with security equipment.  (*Id.*, ¶¶ 149–55.)

retaliatory motive.  Indeed, Ofori sometimes includes facts admitting that defendants had a permissible basis for the action taken (such as admitting that he engaged in the conduct for which he was issued a disciplinary charge).  In short, his failure to allege facts to sufficiently state a plausible causal connection, which is evident with regard to many of his claims, requires dismissal of those claims.  *See Adams*, 40 F.3d at 74 (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation).

### 1. Claim 1

Claim 1 alleges that in March 2017, Young, J. Stallard, and Roberts caused Ofori to receive a false charge for tampering with security equipment.  According to Ofori, on March 24, 2017, Roberts reprimanded Ofori after he shook hands with another inmate in the pod, and Ofori reported the reprimand to J. Stallard and other supervisors.  Ofori alleges that those supervisors told Roberts about Ofori's complaint.  The following day, Ofori dropped some items he was carrying, which rolled over the red line in the pod.  Roberts ordered Ofori to return to his cell, and the next day issued him a charge for tampering with security equipment. The charge accused Ofori of crossing the red line and opening a tray slot, and Ofori denies opening the tray slot.  Ofori was subsequently convicted of the charge.  (Am. Compl. ¶¶ 105–11.)

Given Ofori's denial of the tray slot portion of the charge, defendants do not contest at this time Ofori's characterization of the charge as "false."  (Mem. Supp. Mot. Dismiss 17 n.5.) The filing of a false disciplinary charge can be a sufficiently adverse action to satisfy the second element of a retaliation claim.  *See Booker v. S.C. Dep't of Corrections*,  583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*") (concluding that the filing of a false disciplinary charge unsupported

by any evidence warranting that charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights").

As to defendant Young, though, Ofori's only allegation of conduct by him is the conclusory assertion that Young "had [Ofori] retaliated against." (Am. Compl. ¶ 105.) This does not show sufficient personal involvement by Young to state a claim against him, and it fails to allege any adverse action taken by Young. Dismissal of Claim 1 as to Young is warranted. Similarly, as to J. Stallard, Ofori alleges that J. Stallard directed Roberts to retaliate against him, but he provides no *facts* to support that claim.

As to Roberts, Ofori provides more detail. He specifically alleges that Roberts knew Ofori had complained about him *and* the false charge was brought within two days. Defendants correctly note that timing alone is often "too slender a reed on which to rest" a retaliation claim. *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993). This is perhaps particularly noteworthy here, where Ofori admits that he files complaints and informal complaints with regularity. Indeed, "given the frequency of his filings, it is highly likely that at any time he experienced an adverse event, he had recently submitted a complaint" about something. (Mem. Supp. Mot. Dismiss 18.) In similar circumstances, this court has held that temporal proximity provided little evidence of causation. *Guinn v. Crumpler*, No. 7:18cv274, 2020 WL 1666301, at *8 (W.D. Va. Apr. 3, 2020) (noting the high frequency of the plaintiff's filing of informal complaints and grievances and reasoning that because of that frequency, "*any* disciplinary charge filed at *any* time was reasonably likely to have been preceded by [plaintiff's] utilization of the grievance process," which undermined the evidentiary value of temporal proximity in establishing causation).

The allegations of Claim 1, though, refer not just to a general use of the grievance

process, or a retaliatory action that occurred after the filing of a complaint or grievance generally.  In this claim, Ofori alleges that he complained about Roberts specifically, and two days later, Roberts issued him (at least a partially) false charge.[7]  Thus, while the claim may not survive summary judgment, the claim against Roberts is sufficiently alleged at this time.[8]  The motion to dismiss Claim 1 will therefore be denied as to Roberts, and otherwise granted.

### 2. Claim 2

Claim 2 alleges that in April 2017, J. Stallard called Ofori to his office, showed him a stack of his grievances, and told Ofori to withdraw the grievances and stop filing complaint forms.  After Ofori refused to do to, J. Stallard told a counselor who was present to reclassify Ofori in "an unfavorable manner."  (Am. Compl. ¶ 112.)

This claim fails to identify any specific adverse action taken against Ofori.  Although J. Stallard allegedly directed a counselor to reclassify Ofori "unfavorabl[y]," Ofori's amended complaint does not explain what that means, nor does it allege that was actually done.  In the absence of a specific adverse event, his claim fails and must be dismissed.

### 3. Claim 3

In Claim 3, Ofori alleges that around April 2017 Ofori had difficulty accessing legal materials and the law librarian told him that the difficulties were the result of policies put in place by Fleming, Combs, and Young.  Ofori also alleges that Young had previously told him that WRSP sought to obstruct inmates' efforts to litigate against VDOC and that Ofori should

---

[7]  As noted, Ofori admits that a portion of the conduct with which he was charged was true.  Specifically, he admits that Roberts saw him cross the pod's red line, which is not permitted.  Ofori offers an explanation for this conduct, though.

[8]  Although it is not part of the operative complaint because the court denied him leave to add the allegations, Ofori alleges in his verified response to the motion to dismiss that he asked Roberts why he wrote the charge, and Roberts responded, "Stallard tole me you wanted to write me up for telling you y'all can't shake hands." (Dkt. No. 44 at 3.)

abandon his litigation efforts.  (Am. Compl. ¶¶ 113–15.)

This claim fails to identify a sufficiently adverse action to satisfy the second element of a retaliation claim.  The fact that it was difficult to access legal materials does not constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  Furthermore, Ofori alleges that the difficulties were the result of general policies, not specifically aimed at him.  Thus, he cannot show that the policies themselves were a retaliatory action directed toward him or resulting from his litigation activities.

Young's alleged statement, while troubling, is not linked to any particular official action or any specific case Ofori was pursuing.  Moreover, the only other claim in which Young is named—Claim 1—would fail even if the alleged statement were considered together with the allegations in that claim.  As already noted, Claim 1 does not allege that Young took any retaliatory action against Ofori.  *See supra* Section I-C-1.  A retaliatory animus without any adverse action by the particular defendant still fails to state a claim.  *See Martin II*, 977 F.3d at 299.  Claim 3 will be dismissed.

### 4. Claim 4

In Claim 4, Ofori alleges that on May 11, 2017, he was called to J. Stallard's office to discuss complaints he had filed.  While being escorted there, an unidentified officer told Ofori that if he did not "play ball" during the meeting, the officer would tell other inmates that Ofori was a child molester.  Both because he was afraid of that threat and because J. Stallard told him the practices he had complained of would stop, Ofori complied with J. Stallard's request to withdraw a complaint he had filed about not being allowed to attend religious services.  (Am. Compl. ¶¶ 116–17.)

10

First of all, it is unclear whether the alleged threat alone—without it even being acted upon by the officer—is a sufficiently adverse action. *Cf. Hall v. Crook*, No. 2:14cv1164, 2018 WL 3709047, at *6 (S.D. W. Va. July 12, 2018) (holding that an officer's telling other inmates plaintiff was a confidential informant was not a sufficiently adverse action to support a retaliation claim), *report and recommendation adopted*, 2018 WL 3676936 (S.D. W. Va. Aug. 2, 2018).  Regardless, though, the officer who made the threat is not identified as a defendant.  With regard to J. Stallard, the only *defendant* named in the count, Ofori does not allege that the threat was made in front of J. Stallard, nor does Ofori allege that Stallard knew about it.  Stallard's only actions were telling Ofori that the practice about which he had complained would stop and demanding that Ofori withdraw his complaint, to which Ofori agreed.  Thus, Stallard did not take any adverse action against him, and this claim must be dismissed.

### 5. Claim 5

In Claim 5, Ofori alleges that, on several occasions, he received meal trays that contained foods to which he is allergic or he did not receive meal trays that he agreed to accept so that he could give them to another inmate.  He attributes these incidents to retaliation by J. Stallard, S. Stallard (the food service supervisor and a relative of J. Stallard's), Wright, and Stout.

In particular, on one occasion in early 2017, Ofori began submitting complaints to S. Stallard about being served primarily eggs for his meals.  Thereafter, Ofori began receiving meal trays with beans, to which he is allergic.  Ofori asked this to be addressed, but Wright told him, "Both Stallards got you on their list."  Wright also told Ofori to take the bean tray and told him that he would go to segregation if he complained again.

11

Also, during Ramadan in 2017, Ofori organized other inmates to complain about Stout depriving them of in-pod recreation. Then, on June 14, 2017, Ofori informed an officer that his Ramadan tray contained foods to which he was allergic. The officer told Stout that Ofori needed another food tray, but Ofori never received one. He believes that was because of the complaints and also because Stout was "related" to J. Stallard and S. Stallard and shared in their "retaliatory agenda." (Am. Compl. ¶¶ 118–22.)

To the extent that this is a retaliation claim,[9] the court concludes that the alleged adverse actions—receiving trays with one food to which he was allergic and not receiving meal trays on a few occasions—are not sufficient to support a retaliation claim. *See Mateen v. Clark*, No. 7:19-cv-620, 2020 WL 6582833, at *8 (W.D. Va. Nov. 10, 2020) (holding that plaintiff's being charged for six Ramadan trays he did not receive was not a sufficiently adverse action to state a retaliation claim); *see also Hoye v. Gilmore*, 691 F. App'x 764, 765 (4th Cir. 2017) (concluding that transferring the plaintiff to a facility further away from his family was not a sufficient adverse action and would not "deter a person of ordinary firmness from filing prison grievances"; it was at most an inconvenience); *Walker v. Bowersox*, 526 F.3d 1186, 1190 (8th Cir. 2008) (concluding that giving plaintiff an "alternative meal" on two occasions was not a sufficient adverse action); *Johnson-El v. Beck*, No. 3:11-cv-115-RJC, 2011 WL 1155679, at *4 (W.D.N.C. Mar. 25, 2011) (concluding that a transfer which resulted in plaintiff being unable to complete a computer class was insufficient). Claim 5 will be dismissed.

---

[9] Ofori has not stated an Eighth Amendment violation, either. Although the Eighth Amendment requires that prisoners receive special diets when medically necessary, "[c]ourts have consistently held that prison officials comply with this mandate when they provide some foods that the complaining prisoner is able to eat without compromising his health" or where a prisoner is instructed as to how to eat available meals in a way that satisfies his medical needs. *Scinto v. Stansberry*, 841 F.3d 219, 233–34 (4th Cir. 2016). A lack of adequate diet gives rise to an Eighth Amendment claim only where the prisoner "lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet." *Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (quoting *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999)).

Moreover, despite Ofori's continuing allegations of a "retaliatory agenda" and conspiracy among officers to retaliate against him, he has not presented any facts to support his theory, and so he has likewise failed to allege sufficient factual matter to plausibly show causation.

### 6. Claim 6

In Claim 6, Ofori alleges that on April 19, 2017, Ofori requested that J. Stallard return a charger and rechargeable batteries that had previously been confiscated from him, but Ofori was informed that the items could not be located in storage. Ofori later filed an informal complaint, but Bryant told him that the items could not be found. Ofori believes the refusal to return these items to him was retaliation for other complaints he had recently filed. (Am. Compl. ¶¶ 123–24.)

This claim fails first because the loss of a charger and batteries is not a sufficiently adverse action to support a retaliation claim. Other courts have held the same with regard to similar minor property losses or confiscation. *E.g.*, *Zaire v. Coryer*, 204 F. App'x 948, 949 (2d Cir. 2006) (confiscation of plaintiff's towel was *de minimis*, and not a sufficiently adverse action to support a retaliation claim); *Hurd v. Barnette*, No. 6:15cv734, 2017 WL 892118, at *6 (S.D. Tex. Mar. 6, 2017) (same as to loss of radio and temporary confiscation of other property); *Ballance v. Angelone*, 7:01CV00410, 2002 WL 32074716, at * 2 (W.D. Va. May 2, 2002), *aff'd*, 46 F. App'x 223 (4th Cir. 2002) (same as to confiscation of 800 photographs and a pair of headphones); *Ballance v. Young*, 130 F. Supp. 2d 762, 769–70 (W.D. Va. 2000) (same as to confiscation of magazines, fan, clippings, and three scrapbooks). This claim also fails because Ofori also fails, once again, to allege any *facts* to support his claim that the reason the items were not returned to him was to retaliate against him.

For both of these reasons, Claim 6 will be dismissed.

### 7. Claim 7

Claim 7 alleges that in mid-2017 J. Stallard and Hughes transferred Ofori and his cellmate to a "lockdown" pod.  Ofori alleges this was done in order to prevent him from stopping by their office to complain about various issues whenever his original pod was let out.  (Am. Compl. ¶ 125.)

Defendants argue that this claim fails because Ofori fails to identify a sufficiently adverse action, in that he does not allege that conditions in a "lockdown" pod are significantly more adverse than conditions in the previous pod.  The Fourth Circuit has recognized, though, that a prisoner's placement in segregation could constitute an adverse action sufficient to support a retaliation claim.  *Martin v. Duffy*, 858 F.3d 239, 250 (4th Cir. 2017) (*Martin I*).  It is unclear whether a "lockdown" pod is the same as a segregation pod, but it is at least plausible that Ofori has adequately alleged an adverse action.

Defendants do not offer any other ground for dismissal of this claim.  Thus, the motion to dismiss this claim will be denied.

### 8. Claim 8

Claim 8 alleges that on October 22, 2017, Ofori's cell was searched by an officer, who found earbuds with exposed wire in the vent of Ofori's cell.  Ofori admits that the earbuds were his and that he had placed them in the vent, but he claims he did so to dry the earbuds out after accidentally damaging them.  During the search, the officer made comments to Ofori about his allergies and his frequent filing of complaints.  When the officer returned later with Hughes, Hughes also made similar comments about complaints Ofori had filed.  Another officer issued Ofori a charge for possession of contraband, and Ofori later was found guilty of the charge.  (Am. Compl. ¶¶ 126–29.)

Defendants argue that the filing of a *legitimate* disciplinary charge cannot support a retaliation claim, and there is certainly authority, including unpublished Fourth Circuit authority, so  holding.  For example, the Eighth Circuit stated, "While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."  *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990); *see also Richardson v. Ray*, 492 F. App'x 395, 396 (4th Cir. 2012) (rejecting claim that disciplinary charge for covering cell door window was retaliatory, where plaintiff admitted covering window "to take a 'bird bath'" and "presented no support for his claim that he was permitted to cover his window in such a situation"); *Edwards v. Kanode*, No. 7:19CV00188, 2020 WL 1066343, at *5 (W.D. Va. Mar. 5, 2020) (citing to *Orebaugh* and *Richardson* in concluding that plaintiff's retaliatory-discipline claim failed where he did not show he was permitted to engage in the conduct with which he was charged); *Guinn*, 2020 WL 1666301, at *7–*8 (explaining that "the filing of a meritorious disciplinary charge is insufficient to support a retaliation claim" and granting summary judgment against plaintiff's retaliation claim where the evidence supported that he engaged in the conduct with which he was charged); *Haendel v. Clarke*, No. 7:18-cv-00289, 2020 WL 7018564, at *9 (W.D. Va. Nov. 30, 2020) (granting summary judgment against plaintiff's retaliation claim because the filing of a "legitimate disciplinary charge" is not a sufficiently adverse action).

The Fourth Circuit recognized, in *Martin II*, that it is possible that an action could be taken for both a legitimate reason and a retaliatory one.  In such a case, a plaintiff could still prevail if he could prove that, but-for his engaging in the protected activity, the action would not have been taken.  Put differently, *Martin II* recognized that there still could be the possibility of

but but-for causation based on a retaliatory motive, even where the adverse action would have been legitimate in other circumstances.  977 F.3d at 306 (pointing to the "well-settled principle that 'an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate'") (citation omitted).

But even if, after *Martin II*, a legitimate disciplinary charge can constitute a sufficient adverse action in some circumstances, Ofori's claim still fails.  Here, Hughes is the only defendant named in this claim, and Ofori does not allege that Hughes was the person who brought the charge against him.  Thus, Ofori fails to state a claim against the only named defendant in the claim, Hughes.

### 9. Claim 9

Claim 9 makes the general allegation that "WRSP officials" retaliated against Ofori by "trying to make his living situations with his cellmates difficult, via targeting them both and blaming it on plaintiff."  In support of this claim, he points to two different dates in November 2017 when his cell was searched, and he and his cellmate were put on "cell restriction."

The first time, Napier and Daniel conducted the search, with a "regular assist" from Byington and Clark, and with the approval of J. Stallard and Hughes.  Some items were confiscated, and Napier and Daniel placed Ofori and his cellmate on temporary cell restriction, prohibiting them from leaving the cell for an unspecified period of time and threatening to punch them in the face if they did so.  Ofori's cellmate was charged with a "fabricated charge for possessing contraband," and Napier told him the charge was "courtesy of Ofori."

The second search occurred on November 27, 2017, and was conducted by Napier and J. Stallard.  No contraband was found, but both Ofori and his cellmate were nonetheless placed on cell restriction for a few days.  Napier told them that, if they came out of the cell, he was going to "put a shank" on them and send them to segregation.  (Am. Compl. ¶ 130.)

During his cellmate's disciplinary hearing, which occurred later on November 27, 2017, the cellmate told the hearing officer that the reason he and Ofori had been put on cell restriction and that he received the charge was to retaliate for complaints made by them.  J. Stallard and Hughes eventually transferred the cellmate to a different pod.  (*Id.*)

Claim 9 fails for several reasons.  First of all, Ofori cannot bring claims on behalf of his cellmate, so the fact that his cellmate received a false charge or was transferred does not give Ofori a cause of action.  Second, as defendants note, his allegations are a little confusing and unclear in that they fail to identify what each of the defendants is specifically alleged to have done.  This is especially true of the "regular assist" reference to defendants Byington and Clark.

Defendants also argue that, even if the acts described are attributable to all of the named defendants and are sufficiently adverse to satisfy the second element of his claim,[10] Ofori does not adequately allege that any of the defendants acted with retaliatory intent.  The

---

[10]   Defendants do not argue that the cell searches and cell restrictions are not sufficiently adverse.  The law is not entirely clear on this point, although it is possible that the two cell searches, without more, are not sufficiently adverse actions, as this court and others have held. *Ballance v. Angelone*, No. CIV.A. 7:01CV 00410, 2002 WL 32074716, at *7 (W.D. Va. May 2, 2002), *aff'd*, 46 F. App'x 223 (4th Cir. 2002) ("A cell shakedown and the alleged confiscation of material, whether or not it was done in response to filing of a lawsuit, is not sufficiently adverse to [the plaintiff] to constitute retaliation."); *Miller v. Coning*, No. CV 11-377-LPS-SRF, 2014 WL 808023, at *13 (D. Del. Feb. 28, 2014) ("[T]wo cell shakedowns over a nine-month period do not constitute adverse action sufficient to state a claim for retaliation."), *report and recommendation adopted*, No. 11-0377-LPS, 2014 WL 3896605 (D. Del. Aug. 7, 2014). *But see Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (concluding that it was a jury issue as to whether two harassing cell searches, which included the confiscation of his legal papers without returning them and the theft of plaintiff's "diet medical snacks," would deter a person of ordinary firmness from exercising his First Amendment rights and collecting authority).

17

court agrees.  The only facts Ofori points to as showing causation are Napier's alleged statement that the false charge was "courtesy of Ofori," and the cellmate's statement, in his disciplinary hearing, that the charge and cell restriction were retaliatory.  But Napier's statement referred to the cellmate's disciplinary charge, and Ofori cannot base his own claim on that charge.  And his cellmate's opinion that the charge and the cell restrictions were retaliation for Ofori's filing of complaints is not a fact that supports causation; it is simply an unsupported (and likely inadmissible) conclusory opinion by a non-party.  In particular, Ofori does not identify that any of the defendants knew that he filed complaints or grievances, that he had recently done so or had filed any against any of them in particular, or any other facts to suggest that the motivation for either the cell searches or the subsequent cell restriction was to retaliate against plaintiff for his use of the grievance system.

For all of these reasons, Claim 9 must be dismissed.

### 10.  Claim 11

Claim 11 alleges that in 2016 and 2017 Ofori had difficulty getting assistance from the institutional attorney.  He further alleges that some of his cases had reached an unfavorable result by the time he was able to see the institutional attorney.  (Am. Compl. ¶¶ 132–34.)  To the extent this is an access to courts claim, it is not part of this case, which consists only of his retaliation claims.

As for any retaliation claim, Claim 11 does not specify that any particular defendant took any adverse action against him or set forth any facts to suggest that the delays in seeing the "institutional attorney" were the result of retaliation.  This claim thus fails and must be dismissed.

### 11.  Claim 12

Claim 12 alleges that in February 2017 Ofori's coffee mug and bowl were confiscated, and although he was informed by Fleming that he would be given replacements, he never received any.  Ofori again sought replacements a year later, after seeing that some other inmates had new bowls, but he was told by J. Stallard and D.C. Mullins that he would not receive replacements due to a policy issued by Combs and other officials.

After Ofori filed an informal complaint about the issue, Mullins told Ofori that he would get a replacement bowl if he agreed to withdraw his complaint.  Mullins told Ofori that he "would regret it later" if he did not agree to withdraw his complaint, but Ofori refused. When Stallard responded and asked to speak with him about obtaining a replacement bowl, Ofori refused to meet with him because he believed the meeting was an attempt to stall.  (Am. Compl. ¶¶ 135–37.)

The only adverse action identified by Ofori in this claim is the failure to receive a replacement bowl.  This minor deprivation of property is not sufficient to chill a reasonable prisoner's exercise of his First Amendment rights.  *See supra* Section I-C-6 (giving examples of cases where property seizures were held not sufficiently adverse to chill First Amendment activity) (citing as examples *Zaire*, 204 F. App'x at 949 (towel); *Hurd*, 2017 WL 892118, at *6 (radio and temporary confiscation of other property); *Ballance*, 2002 WL 32074716, at * 2 (800 photographs and a pair of headphones); *Ballance*, 130 F. Supp. 2d at 769–70 (magazines, fan, clippings, and three scrapbooks)).

Similarly, Mullins's threat that Ofori would "regret it later" is an insufficiently adverse action to support a retaliation claim, in part because it is such a vague threat.  In *Mateo v. Fischer*, 682 F. Supp. 423, 434 (S.D.N.Y. 2010), the court synthesized and summarized case

law addressing whether a threat was sufficient to constitute an adverse action.  It explained that verbal threats of retaliation, unless they are sufficiently specific and direct, generally do not constitute an adverse action for purposes of a retaliation claim.  So, for example, a threat that the plaintiff would have to "pay the consequences for filing a grievance" was not an adverse action, but the statement, "If you don't stop writing grievances, I'm going to break your f__kin' neck" was sufficient.  Mullins's statement is neither specific nor particularly direct.  *See also Torres v. Schafer*, No. 1:20cv257, 2020 WL 1861872, at *5 (W.D. Mich. Apr. 14, 2020) (finding that allegations of "petty verbal harassment" and "vague threats" were insufficient to show adverse action).  Claim 12 will be dismissed.[11]

### 12. Claim 13

Claim 13 alleges that on February 23, 2018, J. Stallard and Mullins caused both Ofori and his roommate to be issued a disciplinary charge for possession of contraband.  Ofori claimed that the items (a piece of surge protector and coax cable cord, which had been hollowed out) were his but that he used them as a showerhead.  He nonetheless pled guilty to the charge.  (Am. Compl. ¶ 138.)

As noted when discussing Claim 8, there is certainly authority that a valid disciplinary charge cannot be a sufficiently adverse action to support a retaliation claim.  *See supra* Section I-C-8; *but cf. Martin II*, 977 F.3d at 306 (explaining that an action motivated by retaliation can support a retaliation claim even if the act, when taken for a different reason, would be legitimate).

Here, the charge may have been legitimate.  But unlike his allegations in Claim 8,

---

[11]  Unlike in *Mateo*, though, here plaintiff alleges that Mullins followed through on that threat.  *Cf. Mateo*, 682 F. Supp. 2d at 434 (noting that where the defendant never follows through on the threat, the "deterrent effect" is decreased).  The "follow-through" here is part of Claim 13, to which the court turns next.

Ofori's allegations in this claim include a number of facts to plausibly suggest a retaliatory motive on the part of the named defendant.  Ofori has specifically tied his prior complaint about the bowl to Mullins' bringing of the "fabricated or trumped up charge" by alleging a temporal connection, in addition to the threat.  In particular, he alleges that Mullins made the threat—"[I]f you don't withdraw it, I'll make you regret it later"—on February 6, 2018.[12] Then, on February 21, 2018, a response was issued to the complaint Ofori refused to withdraw.  Then, two days later, Mullins issued him the disciplinary charge.  Ofori also alleges that, after finding the items in the cell, Mullins returned to the cell and stated, "I bet y'all will drop those complaints now."  Ofori also specifically alleges that other inmates were found in possession of similar items but were not charged.

These additional allegations render Ofori's retaliation claim plausible as to Mullins. Thus, the motion to dismiss will be denied as to Claim 13 against Mullins.  That claim will remain in the case, and the Clerk will be directed to add Mullins as a defendant and notify him of this action, pursuant to Federal Rule of Civil Procedure 4.  (*See supra* note 5.)

### 13.  Claim 14

Claim 14 alleges that in February or March 2018 J. Stallard refused to provide Ofori with a replacement bowl and told Cochrane not to allow Ofori to "get away with anything" in the building.  (Am. Compl. ¶ 140.)  These allegations are similar to those in Claim 12.  For the same reasons that Claim 12 is subject to dismissal, so is Claim 14.  Specifically, the confiscation of a bowl (or failure to give a replacement) is not a sufficiently adverse action to support a retaliation claim.  Further, Ofori has not alleged facts sufficient to establish the third

---

[12]   In one place in his allegations, Ofori states that this occurred in February 2017, but the context and remainder of his claim strongly suggest that was a typographical error.  In particular, he refers to events happening shortly thereafter, as occurring later in February 2018.  (*See generally* Am. Compl. ¶¶ 135–38.)

element of his prima facie case.  He presents nothing other than his own statement that he was retaliated against to suggest that this action was retaliatory.

### 14.  Claim 15

Claim 15 alleges that in March 2018 Cochrane and Farmer caused Ofori to be charged with possession of contraband by planting an item in his cell.  (Am. Compl. ¶¶ 141–42.)[13] Other than a statement that he "was again singled out and targeted—in retaliation—for his complaints and grievances," Ofori does not allege, let alone provide any facts, to show that this action was retaliatory.   He does not allege that any of the officers involved knew of his filings (although in factual allegations in other claims he alleges Cochrane knew about them), nor does he allege that that he had recently filed any complaint or grievance against the officers involved or the officers bringing the charge.  And, as previously noted, given Ofori's pattern of frequently filing such complaints, the temporal connection alone is "too slender a reed" on which to base this claim.  *See Wagner*, 13 F.3d at 91; *see also supra* at Section I-C-1.  In short, there are no facts to suggest causation.  Claim 15 must be dismissed.

### 15.  Claim 16

Claim 16 alleges that on April 19, 2018, two officers (J.R. Thomas and W.K. Smith)[14] searched Ofori's cell and found a pair of earbuds wrapped in tissue paper, which Ofori claimed were his.  Ofori then saw officers exiting the cell carrying a pillowcase full of items, but Ofori could not see what they were.  Ofori says that Cochrane gave the officers permission to charge

---

[13] His amended complaint also asserts that he was denied due process during the disciplinary proceedings on the charge, but that due process claim is not part of this case.

[14] Thomas and Smith were named as defendants in Count VIII of Ofori's amended complaint and were identified as Agents Y-2 and Y-3, respectively.  (*See* Am. Compl. at 5).  When the case was severed, however, they were mistakenly not included as defendants in this case.  Ofori noted a similar omission with regard to defendant Wroten, but he never called the court's attention to the fact that Thomas and Smith were missing.  Regardless, the court concludes it is not necessary to add them as defendants because this claim against them is subject to dismissal for the reasons set forth in this opinion.

Ofori with possession of contraband and possession of intoxicants.[15]  In this claim, Ofori notes that Cochrane had received many of Ofori's written complaints over the preceding two months.

Ofori also was sent to segregation, and he alleges that Cochrane gave a "head nod" to approve Ofori's transfer to segregation.  While he was in segregation, some of Ofori's property went missing, including some legal documents, books, shoes, eye glasses, about 400 personal and commercial photos, and several hygiene items.  He alleges, in conclusory fashion, that Thomas, Smith, and Cochrane intentionally discarded his personal property and that dismissed-defendant Ravizee, who he alleges failed to respond to his grievance, "joined in on the conspiracy by circumventing his efforts to have the matter addressed through the grievance process."  (Am. Compl. ¶¶ 143–47.)

As with so many of his claims, the allegations Ofori sets forth in this claim fail to establish any retaliatory motive on the part of any of the defendants.  Ofori alleges that Cochrane was aware of "several complaints" he had submitted to Cochrane in the preceding two months, so he alleges knowledge on the part of Cochrane as to filing of complaints.  He does not allege any knowledge of his complaints by the other defendants, however.  And while he alleges that Cochrane, with a "head nod" gave approval for him to be sent to segregation and for the charge to be issued against him, nothing about his allegations suggest that Cochrane was involved in the cell search or had any knowledge that the charges might be false.  Thus, Ofori has failed to sufficiently allege facts that could plausibly show defendants' decision to bring charges was motivated by his filing of complaints, and Claim 16 will be dismissed.

### 16.  Claim 17

Claim 17 alleges that at an unspecified time, Cochrane caused Ofori to incur charges

---

[15] Ofori also alleges his due process rights were violated during that hearing, but those claims are not part of this particular lawsuit.

for accepting meal trays during Ramadan that Ofori actually had not received.  Ofori does not allege how many times this occurred or how much he was charged.  He further alleges that Cochrane does this as a method to defraud inmates, and that other officials charge for meals in retaliation for filing grievances.  He also alleges that, when he grieved the issue, officials ordered retaliatory searches of his cell.  (Am. Compl. ¶ 148.)

To the extent that he is challenging the imposition of the monetary charges itself as retaliatory, his claim fails first because he has not plead facts to show a sufficiently adverse action.  *See Mateen*, 2020 WL 6582833, at *8 (holding that plaintiff's being charged for six Ramadan trays he did not receive was not a sufficiently adverse action to state a retaliation claim).  It also fails because he has not alleged facts sufficient to show that any defendant harbored a retaliatory motive against him.  Claim 17 will be dismissed.

## II.   OTHER PENDING MOTIONS AND ISSUES

As previously noted, defendants also have filed a motion for summary judgment as to claims 10 and 18, which will be addressed separately.  In addition to that motion, three other motions are pending before the court, and the court addresses them briefly.

### A.  Plaintiff's Miscellaneous Motion Requesting "Help" (Dkt. No. 52)[16]

In a motion filed in June 2021, and supplemented later with additional allegations, Ofori describes acts by WRSP officials that he believes are retaliatory and/or attempts to hinder his ability to prosecute this lawsuit.  He claims that he learned in March 2021 that high-ranking officials at WRSP were "targeting him" in retaliation for his lawsuit, including spreading false

---

[16] Ofori's motion listed four case numbers, and the Clerk filed the same letter motion in all of Ofori's pending cases at the time.  Two of those cases have since been dismissed, although one has a pending motion to reconsider the dismissal, *Ofori v. Clarke*, No. 7:18-cv-587 (W.D. Va.).  The same motion also remains pending in *Ofori v. Fleming*, No. 7:20-cv-344 (W.D. Va.).  The court will address it separately in each of the cases where it remains pending.

rumors about him to other inmates "in order to take a hit out on [him]." (Dkt. No. 52 at 1.)  He explains that he wrote a letter to the Office of the Virginia Attorney General, laying out all of the details and requesting an independent investigation. (*Id.* at 2.)  He also began to grieve the incidents and has requested an investigation from VDOC's Chief Inspector, but his submissions have "disappeared" or were never filed, and he has not gotten responses or replies to his concerns. (*Id.*)  He further states that "other roadblocks" are being put in his way that are hindering his litigation efforts. (*Id.*)  For example, he alleges that his requests for copies of legal documents are being ignored, his documents keep going missing, his outgoing legal mail is being held at the prison for weeks before it is sent out, and "upon information and belief," security staff are opening his outgoing mail to read the contents.  He asks that the court "have this matter looked into" and that the court "do something about the problem." (*Id.*)  His motion includes a copy of a lengthy letter dated March 31, 2021, and addressed to the Assistant Attorney General, which contains significantly more detail (Dkt. No. 52-1 at 1–10), as well as copies of letters he sent to VDOC's chief inspector and VDOC's regional ombudsman. (*Id.* at 11–13.)

The court directed defendants to respond, and they have done so, providing sworn testimony from three different individuals addressing and denying Ofori's allegations.  As their response summarizes, "[o]fficials have investigated Ofori's claims and found no evidence that WRSP staff have retaliated against him, directed other inmates to attack him, improperly held his mail, denied requested copies, or refused to file his grievances." (Dkt. No. 54 at 3–4.)

Ofori also has filed a reply (Dkt. No. 59), which the court has considered.  His reply requests orders directing that certain video and other documents related to his recent allegations be produced by defendants and requesting that he be relocated to another prison outside the western region of Virginia. (*Id.* at 8–9.)  To the extent that his motion is intended to be a motion

25

for preliminary injunction, the court concludes that it fails to satisfy the high standard for receiving such relief.

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly."  *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991).  The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014).  The remedy may be granted only on a "clear showing" of entitlement to relief.  *Winter*, 555 U.S. at 22.  Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief.  *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Based on the allegations and information Ofori has presented, it is apparent that he cannot satisfy at least one *Winter* factor: the second one.  To do so, he must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd.*, 952 F.2d at 812.  Without a clear showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief.  *See DiBiase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (explaining that a "possibility" of irreparable harm is insufficient to satisfy the movant's burden).

First of all, the court has obtained sworn testimony that refutes Ofori's allegations and greatly undermines his allegations.  The affidavits include documents showing outgoing legal mail sent by Ofori, which reflect a number of mailed documents sent during the time period

Ofori is referencing, as well as incoming legal mail that he has signed for during this same

period.   In any event, his request for "help" is vague, and the court does not itself conduct

investigations.  His reply clarifies that he wants certain videos and documents preserved and

provided and that he wants to be transferred out of the western region of Virginia, but these are

not appropriate requests for preliminary injunctive relief.  Requests for discovery must be

brought as discovery requests or motions and must be relevant to the claims in the particular

lawsuit where the discovery is being requested.  Ofori will not face actual and imminent harm in

the absence of being given the videos and documents he requests.

Likewise, a transfer to a different prison (or region of VDOC prisons) is not appropriate

here, either.  First of all, a prisoner has no constitutional right to be housed in any particular

facility.  *Meachum v. Fano*, 42 U.S. 215, 224 (1976).  Relatedly, the decision about where to

house any particular inmate is generally committed to the discretion of the state's prison

officials, and a federal court must show deference to such decisions.  *Wetzel v. Edwards*, 635

F.2d 283, 288 (4th Cir. 1980).  Thus, an order requiring a transfer to other VDOC facilities is not

appropriate, especially in light of Ofori's failure to provide detail as to any specific, likely future

harm if he is not transferred.

Ofori's request for a preliminary injunction also fails because an interlocutory injunction

is not appropriate when the harm complained of does not arise from the harm alleged in the

complaint.  *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997).  Put differently, the

movant must establish a relationship between the injury claimed in the motion and the conduct

giving rise to the complaint.  *Id.*; *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir.

2003).  "[A] preliminary injunction may never issue to prevent an injury or harm which not even

the moving party contends was caused by the wrong claimed in the underlying action."  *Omega*

*World Travel*, 111 F.3d at 16; *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Although Ofori alleges that the actions set forth in the motion for preliminary injunction are retaliatory and so are, in a sense, "related" to his amended complaint's claims, they are not harms that arise from the same allegedly retaliatory acts that his claims rely upon. Thus, they are not harms that are "caused by the wrong claimed in the underlying action." *See Omega World Travel*, 111 F.3d at 16. Accordingly, preliminary injunctive relief is not available in this case to remedy them, and Ofori's motion is denied for this reason, as well.

To the extent that Ofori's letter motion could be construed as a motion to amend his complaint to add new retaliation claims based on these more recent events, his motion will be denied without prejudice. As noted in the court's prior order denying Ofori's motion to amend, the complaint that began the original case that was severed into this case was initially filed back in 2018, and the amended complaint in that case (which was the original complaint in this case) was filed in November 2019. The potential claims in Ofori's recent letter motion are based on events that occurred in 2021, years after the events alleged in this case. For all of these reasons, and to the extent Ofori is asking to amend his lawsuit, his request is denied without prejudice. Nothing in this ruling prevents Ofori from asserting any of these claims in a separate action, however, after first exhausting his administrative remedies and subject to the applicable statute of limitations.

**B. Plaintiff's Motion to Compel (Dkt. No. 65) and Defendants' Motion for Protective Order (Dkt. No. 62)**

In these dueling discovery motions, Ofori asks for an order compelling production of certain discovery related to the claims and events from 2021 that he has now been denied leave to include in this case. Defendants seek a protective order from such discovery. Because the discovery sought is irrelevant to the claims *in this case*—which are based on events from 2018 or

28

before, not 2021—the court concludes that a protective order is appropriate. Accordingly, defendants' motion (Dkt. No. 62) will be granted, and Ofori's motion to compel (Dkt. No. 65) will be denied.

### C. Defendant Wroten

One of the defendants in this case, defendant Wroten, was erroneously omitted from the list of defendants when the case was created as a result of the severance. Ofori later moved to reinstate him, which the court granted. (Dkt. Nos. 46, 48.) Defendants were unable to identify him, so the court directed Ofori to provide additional information to assist in doing so, which he has now done. (Dkt. No. 60.) Wroten has not yet been served, however.

Defendant Wroten is named as a defendant only in Claims 17, where he is referred to as Agent Y-1. (Am. Compl. ¶¶ 5, 148.) The court sua sponte considers the claim against him, pursuant to 28 U.S.C. § 1915(e)(2)(B) (requiring screening for complaints of plaintiffs proceeding *in forma pauperis*) and 28 U.S.C. § 1915A(b) (requiring screening of complaints where a prisoner seeks redress from a governmental entity or officer or employee thereof).

In Claim 17, Ofori alleges that, in retaliation for Ofori's filing a number of complaints against Wroten for alleged mistreatment, Wroten marked plaintiff down as receiving trays during Ramadan (so that he would be charged for trays he did not receive). As already noted in discussing Claim 17, Ofori does not identify how many times this happened or what he was charged for the trays. As pled, this is not a sufficient adverse action that would deter a reasonably firm prisoner from engaging in First Amendment protected activity. *See Mateen*, 2020 WL 6582833, at *8 (a claim that a prisoner was charged for six Ramadan trays that he did not receive, at a total cost of $4.20, was not a sufficient adverse action to support a retaliation claim).

In light of that dismissal, there is no need to serve Wroten, and he will be terminated from the case.

## III.  CONCLUSION

As set forth above, defendants' motion to dismiss will be denied in part and granted in part.  Additionally, for the reasons set forth above, plaintiff's motion for help will be denied insofar as it requests injunctive relief, and denied without prejudice insofar as it seeks to include new and additional claims in this action.  Lastly, defendants' motion for protective order will be granted, and plaintiff's motion to compel will be denied.

These and additional rulings will be set forth in an appropriate order.

Entered: September 29, 2021.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge