IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRY K. OFORI, | ) | |
| Plaintiff, | ) | Civil Case No. 7:20-cv-00345 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| LESLIE J. FLEMING, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Terry K. Ofori, a prisoner in the custody of the Virginia Department of Corrections ("VDOC") proceeding *pro se*, filed a civil rights complaint asserting numerous claims against more than thirty defendants, which was originally docketed as *Ofori v. Clarke*, Case No. 7:18-cv-587 (W.D. Va.). Because the original complaint contained misjoined claims and defendants, the court directed Ofori to file an amended complaint to correct that deficiency, and gave specific instructions about complying with Federal Rules of Civil Procedure 18 and 20. (*Id.*, Dkt. Nos. 51, 52.) Ofori filed an amended complaint (*id.*, Dkt. No. 57), but, as the court noted, it still did not entirely comply with the joinder rules. Rather than striking it for a failure to comply, however, the court screened and sua sponte dismissed some of his claims and severed the others into separate lawsuits. (*Id.*, Dkt. Nos. 62, 63.)

Ofori's amended complaint in that case was docketed as the original complaint in this case. (Dkt. No. 1.) By opinion and order entered on September 29, 2021, the court granted in part a motion to dismiss filed by some of the defendants, and it directed those defendants to file either a motion for summary judgment regarding the remaining claims or a notice saying one would not be filed. They elected to file a motion, and defendants already had filed a motion for summary judgment. Thus, two motions for summary judgment, which collectively seek summary judgment on all remaining claims, are ripe and pending before the court.

Also pending before the court are two other motions: (1) Ofori's renewed motion to

amend or correct complaint (Dkt. No. 73), which defendants have opposed (Dkt. No. 78), and to which Ofori has filed "objections," which the court treats as a reply (Dkt. No. 79); and (2) defendants' second motion to amend/correct their amended answer (Dkt. No. 74).  Ofori also filed a proposed second amended complaint (Dkt. No. 80), which he alleges he submitted to prison officials with his motion to amend.  It was not received, though, until after briefing on the motion to amend was complete.

For the reasons discussed in more detail in this opinion, the court will deny Ofori's motion to amend, grant defendants' motion to amend, grant defendants' first motion for summary judgment, and grant in part and deny in part defendants' second motion for summary judgment.

## I.   PARTIES' MOTIONS TO AMEND

### A.  Ofori's Motion to Amend

Prior to addressing the merits of Ofori's claims, the court must address Ofori's latest motion to amend his complaint.  Specifically, the Clerk received from him a renewed motion to amend on October 27, 2021, which seeks to add additional factual allegations to his current complaint.  (Dkt. No. 73).  Later, Ofori filed a 132-page document that is titled as his "2nd Intervention Amended Complaint."  (Dkt. No. 80.)  In direct contravention of repeated admonitions from this court, that proposed amended complaint includes numerous claims against sixty-nine defendants.  If permitted, it would thus add dozens of new defendants to this case, at least some of whom would be improperly joined.

The court agrees with many of the reasons defendants have given in their opposition as to why Ofori's latest motion to amend should be denied.  (*See generally* Dkt. No. 78.)  And the same reasons previously given by the court in denying Ofori's prior motions to amend are equally applicable here.  For example, the first document he submitted (Dkt. No. 73) is not a

stand-alone document, but it would have to be considered in conjunction with other documents to collectively constitute a complete complaint, which is improper. (*See* May 21, 2021 Order at 3, Dkt. No. 48 (noting same as to prior request to amend).)  Second, at least some of Ofori's allegations stem from events in 2017, now almost five years ago.  It would greatly prejudice defendants to allow new allegations based on five-year old events, especially after motions for summary judgment have been filed. (*Id.*; *see also* Sept. 29, 2021 Mem. Op. at 28, Dkt. No. 67.)

The addition of new defendants and claims, too, would be prejudicial at this point in the case.  Many of Ofori's claims have been dismissed and summary judgment motions are pending as to the rest.  Thus, allowing amendment would continue to prolong resolution of this case.  And notably, Ofori provides no explanation for why he waited approximately four years from the filing of his original complaint (in Case No. 5:18-cv-587) to add these claims and defendants and no explanation for why he could not have added them sooner.

Lastly, Ofori has exhibited a pattern—in this case and others pending before this court— of seeking to amend his complaint either before or immediately after dispositive motions are filed by defendants, instead of responding to the substance of the motion.  He continues the pattern here: he has not even attempted to file a response to defendants' second motion for summary judgment, but instead has moved to amend.  Defendants characterize this habit as evidence of bad faith, which Ofori denies.  But regardless of whether Ofori has filed in bad faith, his latest motion to amend and proposed amended complaint seek—once again—to add new (and improperly joined) defendants and claims, after he repeatedly has been admonished he may not do so in this case.  His motion for leave to amend (Dkt. No. 73) will be denied.

**B.  Defendants' Motion to Amend Answer**

As noted, defendants also have filed their own motion to amend.  In it, they explain that they seek to amend their answer "in order to incorporate their responses to those claims that

remain active following the Court's ruling" on the motion to dismiss.  (Dkt. No. 74 at 1.)  Ofori

has not opposed that motion, and the court finds that it is well-taken.  Accordingly, defendants'

second motion to amend their answer (Dkt. No. 74) will be granted, and their Second Amended

Answer (Dkt. No. 74-1) will be deemed filed as of October 29, 2021.

## II.   BACKGROUND

### A.  Remaining Claims in Case

As stated in the court's prior order, remaining in the case are the following five retaliation

claims, all of which are based on events that occurred at Wallens Ridge State Prison ("WRSP").

Ofori alleges that the actions listed as to each claim were taken for retaliatory reasons:

> Claim 1 (against Roberts only): In March 2017, Roberts issued a false charge against
> Ofori for tampering with security equipment.
>
> Claim 7 (against Stallard and Hughes): In mid-2017, Stallard and Hughes had Ofori
> transferred to a "lockdown pod."
>
> Claim 10 (against Stallard, Hughes, and Daniel): In December 2017, defendant Daniel, at
> the instruction of Stallard and Hughes, searched Ofori's cell and made derogatory
> comments about Ofori to his cellmate.  They later had Ofori falsely charged with an
> unspecified disciplinary infraction, which was subsequently dismissed.
>
> Claim 13 (against Mullins): On February 23, 2018, Mullins charged Ofori with a
> disciplinary infraction for possession of contraband.
>
> Claim 18 (against Stallard, Combs, and Stout): On November 21, 2018, these three
> defendants caused Ofori to receive a false disciplinary charge for tampering with security
> equipment.

(*See* 9/29/2021 Order at 1, Dkt. No. 68; *see also generally* Am. Compl., Section VIII, Dkt. No. 1

(setting forth retaliation claims).)[1]

In the first motion for summary judgment (Dkt. No. 32) ("1st MSJ"), defendants Combs,

Daniel, Hughes, Stallard, and Stout seek summary judgment as to Claims 10 and 18 on two

---

[1]  The court refers to the originating complaint in this case, which was the amended complaint in the case
from which this case was created, as the amended complaint.  (*See also* Sept. 29, 2021 Mem. Op. 1 n.1, Dkt. No.
67.)

grounds.  First, they contend that Ofori failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Second, they argue that there is no genuine dispute of material fact as to those claims such that they are entitled to judgment as a matter of law.   (*See generally* Mem. Supp. 1st MSJ, Dkt. No. 33.)

The second motion for summary judgment (Dkt. No. 75) ("2d MSJ"), filed by defendants Hughes, Stallard, Roberts, and Mullins, seeks summary judgment as to the remaining three claims (Claims 1, 7, and 13), based on the same two grounds: Ofori's alleged failure to exhaust and the lack of disputed material facts as to the merits of his claims.  (*See generally* Mem. Supp. 2d MSJ, Dkt. No. 76.)

## B.  Summary Judgment Record

Given the record in this case and the way Ofori titles some of his documents, it is important to be clear about what materials the court is considering as part of the summary judgment record.  The summary judgment record consists of the following:

1. All of the affidavits with exhibits attached to the supporting memoranda for the two summary judgment motions, including those that are separately docketed (Dkt. Nos. 33, 38, 76, 83);

2. Portions of Ofori's verified amended complaint (Dkt. No. 1),[2] to include the statement of jurisdiction and venue, the list of parties (*id.* at 3–5), all of Count VIII (*id.* at 45–80), and his requests for relief (*id.* at 81–84);

3. Ofori's verified proposed second amended complaint (Dkt. No. 44), which the court previously said it would treat as Ofori's supplemental response to the first motion for summary judgment (Dkt. No. 48 at 3); and

4. Ofori's response in opposition to the first motion for summary judgment (Dkt. No. 55), which also includes an affidavit from him with exhibits (Dkt. No. 55-2).

As noted, Ofori has not filed a response to the second motion for summary judgment.

---

[2]  In the Fourth Circuit, verified complaints by *pro se* prisoners are "'the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" *Goodman v. Diggs*, 986 F.3d 493, 499 (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

Although his latest proposed amended complaint (Dkt. No. 80 & 80-1) is a verified document and was filed before his response deadline expired,[3] (Dkt. No. 80-1 at 73), the court declines to consider it as an opposition to the motion for summary judgment for several reasons.[4]

First, Ofori does not state that the document is being filed in response to the motion for summary judgment. And based on the date he signed it—October 22, 2021—he could not possibly have intended for it to be a response to the summary judgment motion, which was not even filed until a week later, on October 29, 2021.

Even if Ofori intended the verified allegations in that document to be offered in opposition to the summary judgment record, he has not presented that information in a manner that would allow the court to determine which undisputed facts set forth by defendants he disputes or to which arguments he is responding. "Judges are not like pigs, hunting for truffles buried in [more than one hundred pages of an improperly submitted document.]" *Walker v. Prince George's Cty.*, 575 F.3d 426, 429 n.* (4th Cir. 2009) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The court will not sort through a 130-page proposed amended complaint (which, in this case, contains misjoined claims, purports to add dozens of new defendants, and references numerous incidents unrelated to the claims on which summary judgment is sought) in an attempt to determine which paragraphs or pages might have information that is responsive to the specific allegations and purported "undisputed facts" set forth by defendants. Accordingly, the court will not consider that document (Dkt. No. 80) as evidence offered in opposition to the summary judgment motion.

---

[3] The document is timely if the court treats it as filed on the date Ofori signed it, which was October 22, 2021. (Dkt. No. 80-1 at 73.) He does not state when he submitted it to prison officials, however, which is the operative date for filing. *Houston v. Lack*, 487 U.S. 266, 276 (1988). The envelope in which it arrived states it was received in his facility's mailroom on November 30, 2021, and it is postmarked November 30, 2021. (Dkt. No. 80-1 at 74–75.)

[4] As discussed *supra* Section I-A, the court already has denied him leave to file that document as an amended complaint.

### C.  Factual Background Concerning Exhaustion

#### 1.  VDOC's Grievance Procedure

VDOC Operating Procedure ("OP") 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints, and it applies to most aspects of prison life.  OP 866.1 provides that most issues that affect the grievant personally are grievable, but there are some exceptions, including matters beyond the control of the VDOC (such as decisions of the Virginia Parole Board, court decisions, and laws and regulations).  Additionally, the grievance process may not be used to challenge disciplinary hearings or convictions.  (Ravizee Aff. ¶ 5, Dkt. No. 33-1.)

OP 866.1 requires that, before submitting a formal grievance (also known as a "regular grievance"), the inmate must demonstrate that he has made a good faith effort to resolve the issue informally through the procedures available at the institution to secure institutional services or resolve complaints.  Generally, this may be accomplished by submitting an informal complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and response.  Upon receipt, each informal complaint will be logged, and the receipt returned to the offender.  (OP 866.1 § V(A)(4).)  The response to the informal complaint should be given within 15 calendar days.  (Ravizee Aff. ¶ 6 & Ex. A.)

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the appropriate form.  Regular grievances generally must be submitted within 30 days from the date of the incident or discovery of the incident.  Even if an offender has not received a response to an informal complaint, the offender still must submit the regular grievance within 30 days of the date of the incident or its discovery and can submit the informal complaint receipt as documentation, rather than the informal complaint itself, as is normally required.  (*Id.*; Ravizee Ex. A, OP 866.1 § V(A)(3).)

7

Prior to reviewing the substantive claims of the grievance, prison officials conduct an "intake" review to ensure that it meets the published criteria for acceptance.  In addition to including the informal complaint or receipt, the grievance must raise a grievable issue and may contain only one issue.  (Ravizee Aff. ¶ 5; OP 866.1 §§ IV(M), VI(A)(2).)  If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return it to the inmate with instructions on how to remedy any problems with it.  That should be done within two days of receipt.  The inmate may seek review of the intake decision by sending the grievance form to the regional ombudsman.  There is no further review of the intake decision.  (Ravizee Aff. ¶ 5.)

OP 866.1 explains that "[i]f a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance.  The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue."  (Ravizee Ex. A, OP 866.1 § IV(O)(2)(b).)  Thus, if a prisoner never submits a regular grievance, or his regular grievance is never properly submitted and rejected at intake, he has not properly exhausted.

There are three potential levels of review for an accepted regular grievance: (Levels I, II, and—for some issues—Level III), and the policy includes specific deadline for filing those appeals and for prison officials to respond to them.  None of these are relevant here because neither party makes any allegations as to grievance appeals.  (Ravizee Aff. ¶ 7.)

Defendants have presented evidence that Ofori failed to exhaust all of his claims. Specifically, Ravizee's affidavit states that there is no record that Ofori has filed any grievances alleging retaliation as set forth in his five remaining claims.  (Ravizee Aff. ¶ 10 & Encl. B;

Ravizee Third Aff. ¶¶ 3–7, Dkt. No. 76-3.)  Moreover, although disciplinary convictions themselves are not grievable and have a separate appeal process, a claim that a particular officer brought a disciplinary charge to retaliate against an inmate for engaging in protected activity is a grievable issue.  (Ravizee Aff. ¶ 10.)  Consistent with this understanding, when Ofori tried to argue, in his appeal from the disciplinary conviction on which Claim 18 is based, that the charge was brought in retaliation for his filing of a lawsuit, the written appeal notice specifically advised that such "allegations should be addressed in another venue such as the Grievance process.  The Disciplinary process is designed to determine guilt or innocence based on the evidence presented at the hearing."  (Dkt. No. 38 at 16.)

### 2.  Ofori's Attempts at Exhaustion

Ofori does not dispute that he did not properly and fully exhaust his administrative remedies as to the five remaining claims.  Instead, in his opposition to the first motion for summary judgment, Ofori argues that there are material disputes of fact as to whether "WRSP officials improperly prevented him from accessing or completing the grievance process." (Opp'n to 1st MSJ 3, Dkt. No. 55.)

In support of his argument that the grievance system was not available to him, Ofori relies on three main arguments.  The details as to how each one relates to each of the five remaining claims will be discussed in context below, but the court provides an overview here. First, he presents his own testimony that he was told repeatedly—and by different defendants— that he could not grieve any act of retaliation that resulted in a disciplinary charge, but he had to present that allegation as part of the disciplinary process.  Ravizee contests this, and VDOC's policy supports her testimony.   But Ofori has referenced specific defendants who told him, on specific dates, that he could not grieve a claim that an officer brought a false disciplinary charge against him to retaliate for his filing of complaints.  This argument also finds support in some

documents in the record.  In several, Ofori attempted to file a grievance alleging that an officer retaliated against him by bringing a disciplinary charge, but the grievance was rejected, and he was advised to raise the issue during the disciplinary hearing process.

Second, Ofori argues that he requested and was repeatedly refused informal complaint forms.  As to many of the times he was denied informal complaint forms, he has specified who he asked and when it was denied.  He also has presented his own testimony as to the reasons given for not giving him informal complaint forms, such as "that is a request for service" or "it does not affect you personally," and also that he had to raise the claim of retaliation in the grievance process.

Third, Ofori argues that he did obtain and file an informal complaint regarding two of his claims (Claims 10 and 18), but that those complaints "disappeared."  Critically, though, he does not provide any details about when he submitted those complaints or to whom.  Nor does he indicate why he did not obtain a receipt or at any point ask for a receipt if he had submitted his grievance.  Even if he did not receive a timely response to the informal complaints he supposedly submitted, he could have filed a grievance by attaching a receipt from his informal complaint.

### III.  DISCUSSION

#### A.  Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[5]  In making that determination, the court must take "the evidence and all

---

[5]  Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."
*Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials
of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for
trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Moreover, "[t]he mere
existence of *some* alleged factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment." *Id.* at 247–48.  Instead, the non-moving
party must produce "significantly probative" evidence from which a reasonable jury could return
a verdict in his favor.  *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

## B.  Exhaustion Under the PLRA

As noted, defendants ask for summary judgment first on the grounds that Ofori failed to
exhaust his administrative remedies.  The PLRA provides that "[n]o action shall be brought with
respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until such administrative remedies as
are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "allow[s] a
prison to address complaints . . . before being subjected to suit, reduc[es] litigation to the extent
complaints are satisfactorily resolved, and improve[es] litigation that does occur by leading to
the preparation of a useful record."  *Jones v. Bock*, 549 U.S. 199, 219 (2007).   "[E]xhaustion is
mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Id.* at 211.

The PLRA requires "proper exhaustion" of available remedies prior to filing suit.
*Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "[P]roper exhaustion demands compliance with an
agency's deadlines and other critical procedural rules because no adjudicative system can
function effectively without imposing some orderly structure on the course of its proceeding."
*Id.* at 90–91.  Thus, an inmate's failure to follow the required procedures of the prison's

administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Id.* at 90. Notably, moreover, district courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643. Federal courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Hill v. O'Brien*, 387 F. App'x 396, 400 (4th Cir. 2010).

### C.  Exhaustion of Ofori's Claims  (Claims 1, 7, 10, 13, and 18)[6]

#### 1.  Claim 7

Claim 7 is Ofori's allegation that he was sent to a "lockdown pod" by Stallard and Hughes so that they would not have to deal with his many complaints.  Most of Ofori's sworn allegations as to exhaustion are contained within Dkt. No. 44.  Additional allegations appear in Dkt. No. 55, his supporting affidavit, and exhibits.  Notably, Ofori offers no allegations in Dkt. No. 44 as to *any* efforts to exhaust Claim 7.  (*Id.* at 9–10.)  For example, he does not allege that he specifically sought informal complaint forms to complain about his transfer or that he submitted any such forms.  And Claim 7 does not involve a disciplinary charge, so any confusion or misinformation over whether an allegedly retaliatory disciplinary charge is grievable is immaterial to this claim.  He basically offers nothing other than his general assertion that he often requested and was denied informal complaint forms.

Ofori's general assertion that his ability to file grievances has been hindered is greatly undermined by his grievance records and history.  He has filed dozens of grievances and informal complaints while housed at WRSP, and his filings include informal complaints concerning events that were filed around the same time as many of his claims in this case.  (*See generally* Ravizee Aff. Encl. B (grievance records).)  These documents show that Ofori had remedies available to him, but he failed to fully exhaust them.

In any event, he has offered no specific information about any effort to exhaust Claim 7.  His otherwise vague allegations that he was sometimes denied informal complaint forms, or that he was denied those forms as to other claims, cannot satisfy his burden of showing that remedies were unavailable.  *See Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs

---

[6] Some claims are being grouped together, and the court does not address them in numerical order.

that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment.").

Indeed, even Ofori admits that he was able to obtain informal complaint forms from other inmates. And there are documents in the record where he requested informal complaint forms, and it appears he was given some (*e.g.*, Ex. F, Dkt. No. 55-1, at 35), or told to raise his complaint verbally and then, if not remedied, informal complaint forms would be issued (Ex. K, Dkt. No. 55-1, at 47.) Thus, his general assertion is insufficient to show that the remedy was unavailable to him.

For these reasons, the court concludes that the undisputed facts show he failed to exhaust his available administrative remedies as to Claim 7, and that Claim will be dismissed.[7]

## 2. Claims 10 and 18

The remaining four claims (1, 10, 13, and 18) all involve disciplinary charges and, as to exhaustion, Claims 10 and 18 are similarly situated. As to these two claims, Ofori has provided

---

[7] The court also agrees with defendants that there are no disputed facts and judgment in their favor as to Claim 7 is proper. In Claim 7, Ofori alleges that J. Stallard and Hughes had Ofori transferred to a "lockdown pod" in mid-2017 as retaliation for his protected activity. (Am. Compl. ¶ 125.) Defendants have provided testimony, however, showing that Ofori was in a general population pod in B-1 and again when transferred to B-6. According to defendants, Ofori enjoyed the same privileges in B-1 and B-6, which are both general population pods. He remained in Unit B-6 until 2018, when he was moved to a general population housing assignment in C-building. At no point in 2017 was Ofori housed in a segregation cell. (Stallard Aff. ¶¶ 4–5, Dkt. No. 83; Hughes Aff. ¶ 4, Dkt. No. 76-1.) Ofori counters that pod B-6 had more inmate fights and so the pod was kept on lockdown more frequently than pod B-1. (Dkt. No. 44 at 9–10.)

As an initial matter, the court agrees with defendants that a mere transfer to a pod that has more lockdowns is not a sufficient adverse action for purposes of a retaliation claim. See *Hoye v. Gilmore*, 691 F. App'x 764 (4th Cir. 2017) (concluding that transferring the plaintiff to a facility further away from his family was not a sufficient adverse action and would not "deter a person of ordinary firmness from filing prison grievances"; it was at most an inconvenience); *Johnson-El v. Beck*, No. 3:11-cv-115-RJC, 2011 WL 1155679, at *4 (W.D.N.C. Mar. 25, 2011) (concluding that a transfer which resulted in plaintiff being unable to complete a computer class was insufficient). Moreover, both Stallard and Hughes have testified that they did not assign to Ofori to a pod that was more frequently locked down in order to avoid his complaints, nor do they have the authority to do so. They also aver that they did not retaliate against Ofori (or other inmates) for filing grievances. (Stallard Aff. ¶ 6; Hughes Aff. ¶ 5.) Ofori has presented no evidence to show that they had such authority or that he was transferred in retaliation for his protected activity. Thus, Claim 7 also fails on its merits.

different stories in documents submitted to the court as to his efforts to exhaust.  In some places, he alleges that he was unable to obtain an informal complaint form, relying on that fact to show that remedies were unavailable.  But elsewhere, he contends that he obtained and submitted informal complaints as to these two claims, but they "disappeared."

First, as to Claim 10, Ofori alleges that he requested an informal complaint form from defendants Stallard and Hughes on December 21, 2017, after his cell was searched, but they told him that a charge was being issued so he would have to raise the matter at his disciplinary hearing.  He further asserts that he was "able to buy a complaint form" from another inmate, submitted it, and then sent "inquiries" about it going missing, but "regional officials failed to address the matter."  (Opp'n 1st MSJ at 4, Dkt. No. 55 (citing Dkt. No. 44 at 12 & Ofori Aff, at 7 & Ex. L-4).)[8]

Exhibit L-4 (Dkt. No. 55-1 at 51) is a portion of a written appeal from Ofori, in which he is appealing an intake decision on his grievance on a completely different issue (concerning a power surge in his pod on December 2017).  As part of that appeal, Ofori complains about many other issues.  These complaints include an allegation that Stallard and Hughes let subordinates "target" him by regularly searching his cell, and he claims that Stallard and Hughes "set him up" with a charge on December 21, 2017, in an attempt to compel him to stop complaining about them and other issues at WRSP.  He also states, "When I submitted complaint forms in on the problems/retaliations, they were disappeared at the prison, can someone from your office look into these problems/issues for me [as soon as possible]."  (*Id.*)  He presents no evidence as to whether he received a receipt for his informal complaint, and he presents no evidence that he

---

[8]  Ofori refers to his exhibits as "enclosures" and "items" and many of the lettered enclosures have numbered sub-parts.  For consistency, the court refers to them all as "Exhibits" and, for example, refers to his "Enclosure L (item 4)" as Exhibit L-4.  The court also cites to page numbers assigned by the court's electronic case management system.

ever attempted to file a regular grievance about this issue.

His allegations about his attempts to exhaust the November 2018 retaliation referenced in Claim 18 are similar. Ofori alleges he requested a complaint form from the C building supervisors, but he was told he could not be given one. He then obtained a complaint form from another inmate and "submitted it on the issue" but "officials never filed it." Also, when Ofori sent "inquires (via request forms and otherwise)," WRSP and the regional officials failed to address the matter. (Opp'n to 1st MSJ at 5 (citing Dkt. No. 44 at 19; Ofori Aff. at 8 & Ex. M-5). Like Exhibit L-4, Exhibit M-5 (Dkt. No. 55-1 at 59), is a letter to the regional ombudsman. In it, Ofori complains about an issue with his mail, but he also references charges being fabricated against him and states that the complaint forms he has submitted on the issues "are being disappeared at the prison." He also claims that the type of "circumventing practice" that occurred to him (*i.e.*, not giving him complaint forms and/or not filing ones they are given) "are still the norm within the VDOC at WRSP." (Opp'n to 1st MSJ at 7 (citing Ofori Aff. at 3–6 & Exs. A–K).)

In his affidavit, Ofori's story is slightly different than what he wrote to the Regional Ombudsman as to Claim 10. There, he states that, with regard to the December 2017 charge, supervisors would not give him complaint forms when he requested them, but he does not state that he ever filed an informal complaint and that it "disappeared." Instead, he avers that he pursued the matter by sending a letter of complaint to the regional ombudsman on January 30, 2018, which would not constitute proper exhaustion. With regard to the November 2018 charge, he states that a supervisor did give him complaint forms and he was able to buy some, but when he submitted them, they "disappeared." So, he again presented the matter in a letter of complaint to the regional ombudsman.

In evaluating whether Ofori has presented sufficient evidence from which a fact-finder

could conclude that remedies were unavailable to him, the court notes that disputes of fact are not created by conflicting versions of events presented by the same party. *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975 (4th Cir. 1990) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.") (citation omitted).  Thus, the fact that Ofori has said he could not submit an informal complaint because he could not obtain a form, but also has said that he did obtain and submit an informal complaint, but it "disappeared," does not create a dispute of fact precluding summary judgment.

Further, as with Claim 7, Ofori's claim that his informal complaint forms were somehow destroyed or lost by prison officials is belied by the large number of informal complaints and grievances he was able to file during the same time period.

Moreover, and significantly, he fails to offer any specifics as to whom he allegedly gave the informal complaint forms or when.  This alone makes clear that he has failed to meet his burden to show that the grievance system was unavailable to him.  *See Pickens*, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment.").

Additionally, given Ofori's familiarity with the grievance process, he was aware that he should have received a receipt for any informal grievance he submitted.  Nowhere does he allege that he asked for receipts or inquired at the facility level about why he had not received his receipts for the two informal complaints he allegedly filed as to these two claims.  He also does not allege that he ever attempted to file a regular grievance as to either.

Based on the foregoing, the court concludes that the undisputed facts establish that Ofori

failed to exhaust his available administrative remedies with regard to Claims 10 and 18.  He

states in general terms that he was able to obtain informal complaints and that he submitted

them, but he fails to offer any specific or concrete evidence to support that assertion.  Thus, he

has failed to set forth sufficient facts from which a fact-finder could conclude he met his burden

of showing that remedies were unavailable.

### 3.   Claims 1 and 13

As to Claims 1 and 13, Ofori has offered specific testimony regarding being thwarted in

his efforts to exhaust.  As to Claim 1, which alleges that Roberts issued a false and retaliatory

charge against him in March 2017, Ofori alleges that he asked Stallard for an informal complaint

form to complain about the retaliation, and that Mr. Stallard responded, "Per WRSP practice and

VDOC policy, since you got charged, you will have to bring those issues up at the hearing."

(Dkt. No. 44 at 3.)  Then, when Ofori asked the disciplinary hearing officer about it, the officer

said there was no founded grievance to support Ofori's assertion of retaliation, so Ofori could not

present that issue.  (*Id.*)

Similarly, as to Claim 13, Ofori states that he requested an informal complaint form from

Stallard, who refused to give him one and told him to bring up the issue of retaliation at his

disciplinary hearing.  When he tried to present the issue in his disciplinary proceedings, he was

told that he could not do so at the hearing or on appeal.  (*Id.* at 15.)  Ofori thus contends that he

was prevented from exhausting both claims.

Ravizee has offered sworn testimony that a retaliation claim based on an alleged false

disciplinary charge is separately grievable, although the charge itself is not, and the grievance

policy supports her position that the retaliation claim is separately grievable.  (Ravizee Aff.

¶ 10.)  But Ofori has offered sworn testimony that officials repeatedly told him differently.  And

in addition to Ofori's testimony on the point, there are several documents in the summary

judgment record that reflect an inconsistency on this issue. For example, Exhibits E-8 and E-9 (Dkt. No. 55-1, at 31–32) are Ofori's grievance (on an unrelated charge) alleging retaliation as a result of an already-dismissed disciplinary charge, and the response to it, which states that it was rejected at intake on the grounds that the issue was non-grievable. (*See also* Exs. A-1 & A-2, Dkt. No. 55-1, at 2–3 (another regular grievance which alleges, among other issues, that a disciplinary charge against him was brought by the reporting officer to target or retaliate against Ofori for complaining about the officer, which also was rejected at intake because it concerned a disciplinary hearing and was non-grievable).) Ofori appealed that intake decision, noting that he had been told he could not raise it in the disciplinary procedure, but the intake decision was upheld.[9]

Based on the foregoing, the court concludes that there are disputes of fact as to whether Ofori was misled or thwarted in grieving these two retaliation claims, based on conflicting information repeatedly given to him about whether they were grievable. He could have attempted to obtain an informal complaint from another inmate, as he apparently did with regard to Claims 10 and 18. But there is evidence that he was repeatedly told he could not grieve this type of claim, so the fact that he chose not to arguably was because of defendants' conduct and not his.

The court also has considered the impact of the Fourth Circuit's recent decision in *Moss v. Harwood*, 19 F.4th 614 (4th Cir. 2021), which was decided after briefing on the summary judgment motions had concluded. In *Moss*, the pretrial-detainee plaintiff alleged that he was unable to file grievances while he was on lockdown because officers refused to give him forms to file grievances and he was not permitted to use the kiosk. The record, however, contained

---

[9] This particular document is not the strongest support for Ofori's position because the grievance starts out requesting video footage to be used in his upcoming disciplinary hearing. That particular issue (a request for video footage) to be used at the hearing, is clearly related to the disciplinary hearing and non-grievable.

evidence that grievances had been filed for him from the kiosk during the relevant period.  19 F. 4th at 621–22.  The plaintiff explained that he was able to submit grievances only by having other inmates use his kiosk pin number to file grievances for him.  Thus, despite "unrebutted testimony that jail officials refused his requests for forms or access to the kiosk," the district court concluded that administrative remedies were, in fact, available to him.  *Id.* at 622.  The Fourth Circuit affirmed the district court's grant of summary judgment on the grounds that plaintiff had failed to exhaust, because his ability to file grievances "conclusively refutes Moss's allegation that the jail's administrative remedies were not 'available' to him."  *Id.*

At first blush, *Moss*'s holding seems to support defendants' focus here on the fact that Ofori was able to file a number of informal complaints and grievances and thus remedies were available to him.  But the Fourth Circuit also explained that it might be possible for a prisoner to show that remedies were unavailable in some circumstances, but not others.  It explained:

> Moss points to cases recognizing that an inmate able to file one grievance is not necessarily able to file others, at different times or on different topics.  A prisoner's "ability to take advantage of administrative grievances is not an 'either-or' proposition," he explains, because "[s]ometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." *Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006); *see also Hill v. O'Brien*, 387 F. App'x 396, 401 (4th Cir. 2010) (per curiam); *Hill v. Haynes*, 380 F. App'x 268, 273 (4th Cir. 2010) (per curiam).  We agree.  And if there were record evidence to indicate, for instance, that Moss was able to use the grievance system on April 22 to raise issues regarding medical treatment but not disciplinary hearings, then we would have a different case.  But before the district court, Moss offered no account for why he was able to file some—indeed, many— grievances and requests while on lockdown but not the one required here, raising the hearing issue.  Instead, Moss has effectively made this an "either-or" case, *see Kaba*, 458 F.3d at 685, alleging only a blanket denial of *all* access to the grievance system during the relevant period—an allegation that cannot be reconciled with the record evidence.

*Id.* at 622.

The situation in this case is the more nuanced one recognized by the *Moss* court.  Here, Ofori does not contest that he was able to file some informal complaints (or grievances) but contends that he was repeatedly told he could not file a grievance alleging that a disciplinary charge was retaliatory.  Thus, at least as to Claims 1 and 13, he never even tried.

In considering the impact of *Moss*, the court has carefully reviewed all of the informal complaints and grievances filed by Ofori during 2017 and 2018, the years when the remaining five claims occurred.  (Dkt. No. 33-1 at 41–50.)  During those two years, Ofori filed 21 informal complaints, all of which were logged and responded to, in addition to other grievances and appeals.  But none of those alleged retaliation by any prison official or correctional officer.  Thus, unlike in *Moss,* the mere fact that he was able to file many informal complaints does not entirely refute whether remedies were available, at least as to Claims 1 and 13 on the merits, either.[10]

In light of its rulings, the court will refer the case for further proceedings on exhaustion,[11] but because defendants have also moved for summary judgment on the merits, it discusses briefly why defendants are not entitled to summary judgment as to Claim 1 or 13.

---

[10]  As to the other two claims (Claims 10 and 18), Ofori does not allege that he was thwarted altogether but that he filed informal complaints and they nonetheless "disappeared."  As already noted, that type of allegation requires some detail to support it, and he has provided none.  Thus, summary judgment based on his failure to follow through on and fully exhaust Claims 10 and 18 remains appropriate.  By his own allegations, he was not misled into believing he could not pursue those claims; indeed, he alleges—without support—that he attempted to do so.

[11]  "The circuit courts of appeals have uniformly found that a judge can resolve factual disputes concerning exhaustion of administrative remedies under the PLRA."  *Hill v. Haynes*, No. 3:06-CV-136, 2014 WL 4197588, at *3 (N.D.W. Va. Aug. 22, 2014), *aff'd,* 591 F. App'x 223 (4th Cir. 2015) (unpublished).  Such questions of law arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the issue. 28 U.S.C. § 636(b)(1)(B), (C).

**D.  Defendants Are Not Entitled To Summary Judgment as to Claims 1 or 13**

**1.   Retaliation**

To succeed on each of his retaliation claims, Ofori must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct."  *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (*Martin II*) (citing *Martin v. Duffy*, 858 F.3d 239, 249) (4th Cir. 2017)) (alterations omitted).

It appears that Ofori is alleging that, generally, each of the supposedly retaliatory actions was taken against him because he frequently files informal complaints and grievances within VDOC's grievance system.  With regard to claims 1 and 13, defendants do not challenge, for purposes of summary judgment, that Ofori has put forth sufficient evidence of the first and second elements of his prima facie case.  *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (recognizing that the filing of grievances and informal complaints, just like the filing of lawsuits, constitutes activity protected by the First Amendment); *Booker v. S.C. Dep't of Corrections*,  583 F. App'x 43, 44 (4th Cir. 2014) (concluding that the filing of a false disciplinary charge unsupported by any evidence warranting that charge can constitute an adverse action sufficient to support a retaliation claim).

But they contend that his claims fail at the third element, which requires a plaintiff to show a causal causation between the First Amendment activity and the alleged adverse action. In the prison context, the Fourth Circuit has directed district courts to apply the "same-decision test" of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), in determining the causation element.  *Martin*, 977 F.3d at 299.

Under that test, a plaintiff must first put forth evidence to show that his "protected

conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Id.* at 300.  At a minimum, he must allege facts showing both that the defendant was aware the plaintiff had engaged in protected activity and "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).  If plaintiff shows that the protected conduct motivated the defendant or was a substantial factor in the defendant's decision, then the burden shifts to the defendant to prove a permissible basis for taking the adverse action.  *Martin II*, 977 F.3d at 299. "'If the defendant fails to carry that burden, the inference is that 'but for' causation . . . has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant.'"  *Id.* at 299 (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)).

Defendants argue that Ofori has failed to put forward any *facts* from which a jury could find that his protected activity was a "substantial or motivating factor" in the disciplinary proceedings.  They also claim that even if he could establish a *prima facie* case, they have met their burden of showing that they would have filed the charges against him even absent his protected activity.

In addressing these claims, the court remains mindful of the Fourth Circuit admonition that courts must treat an inmate's claim of retaliation by prison officials "with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

## 2.  Claim 1

Claim 1 involves a charge brought by defendant Roberts in March 2017 for tampering with security equipment.  At the time, Roberts was assigned to the control booth in Ofori's pod and witnessed Ofori cross the red line during pod recreation (which is prohibited for security

reasons), access the tray slot of another inmate's cell, and place an item into the cell. Roberts states in his affidavit that he did not file the charge against Ofori in retaliation for Ofori's filing grievances or voicing complaints to his supervisors. He filed the charge because it was appropriate based on Ofori's misconduct. (Roberts Aff. ¶ 5, Dkt. No. 76-2.) Notably, Ofori admits that he crossed the red line (and so admitted at the disciplinary hearing), but he alleges that he did so to pick up some items he was carrying and had dropped. He denies that he opened the tray slot of any other cell. Ofori was convicted of the charge. (Am. Compl. ¶¶ 105–11.)

As evidence that Roberts brought the charge as retaliation for his complaints, Ofori alleges that, the day before the incident leading to the charge, Roberts had reprimanded Ofori after he shook hands with another inmate in the pod, and Ofori complained about the oral reprimand to J. Stallard and other supervisors. Ofori alleges that those supervisors told Roberts about Ofori's complaint. From this, he contends that Roberts was retaliating against him. Ofori also alleges in his verified response (Dkt. No. 44) that he asked Roberts why he wrote the charge against Ofori, and Roberts responded, "Stallard [told] me you wanted to write me up for telling you y'all can't shake hands." (Dkt. No. 44 at 3.) A jury may well disbelieve that Roberts made such a statement, and Roberts has certainly denied that he harbored any retaliatory motive. Robert also has provided a permissible reason as to why he filed the charge, and at least part of the conduct underlying the charge is admitted by Ofori. But given Roberts's alleged statement, the court concludes that there are disputes of fact as to whether Roberts can satisfy his burden to show a permissible reason for the charge. Those disputes preclude summary judgment for Roberts as to this claim on its merits. Accordingly, in the event that the court ultimately rules in Ofori's favor as to exhaustion, this claim will be set for trial.

### 3. Claim 13

Claim 13 is brought against defendant Mullins, based on his charging Ofori with a

disciplinary infraction for possession of contraband on February 23, 2018.  Mullins has testified

that he filed the charge against Ofori after pieces of coax cable were found inside Ofori's cell

mattress during a routine quarterly shakedown.  Ofori acknowledged that the items (a piece of

surge protector and coax cable cord, which had been hollowed out) but insisted that he used them

as a showerhead.  He nonetheless pled guilty to the charge and was found guilty.  (Am. Compl.

¶ 138; Mullins Aff. ¶ 5, Encl. B.)  Mullins stated that he did not place the charge against Ofori as

retaliation, and that the charge was appropriate for the offense.  (*Id.* ¶ 6.)

Defendants also present evidence that Ofori has received numerous institutional

disciplinary convictions for possession of contraband, possession of intoxicants, possession or

paraphernalia; or tampering with security materials, devices, or equipment during his

confinement at WRSP.[12]  Boyd notes that staff must carefully monitor Ofori's activities and

routine cell searches are conducted in a professional manner, but not in retaliation for his

grievances or lawsuits.  Whenever contraband is found, Ofori is appropriately charged.

(Boyd Aff. ¶ 5 & Encl. B, Dkt. No. 38.)

The evidence that Ofori offers to show that the charge was retaliatory is an allegation

that Mullins made the threat—"[I]f you don't withdraw [your complaint], I'll make you regret

it later"—on February 6, 2018.[13]  Then, on February 21, 2018, a response was issued to the

complaint Ofori refused to withdraw.  Two days later, Mullins issued him the disciplinary

charge.  Ofori also alleges that, after finding the items in the cell, Mullins returned to the cell

and stated, "I bet y'all will drop those complaints now."  Ofori also specifically alleges that

other inmates were found in possession of similar items on that day but were not charged,

---

[12]  Ofori's disciplinary record also includes numerous other disciplinary convictions at other prisons, for the same or similar offenses.  (Boyd Aff., Encl. B, Dkt. No. 38.)

[13]  In one place in his allegations, Ofori states that this occurred in February 2017, but the context and remainder of his claim strongly suggest that was a typographical error.  In particular, he refers to events happening shortly thereafter, as occurring later in February 2018.  (*See generally* Am. Compl. ¶¶ 135–38.)

which Mullins denies.

As with the claim against Roberts, a jury might disbelieve Ofori's testimony about what allegedly Mullins said.  And Mullins has perhaps a stronger defense in that plaintiff admits his guilt and pleaded guilty to the charge.  But as this court noted in denying in part defendants' motion to dismiss,

> The Fourth Circuit recognized, in *Martin II*, that it is possible that an action could be taken for both a legitimate reason and a retaliatory one. In such a case, a plaintiff could still prevail if he could prove that, but-for his engaging in the protected activity, the action would not have been taken. Put differently, *Martin II* recognized that there still could be the possibility of but-for causation based on a retaliatory motive, even where the adverse action would have been legitimate in other circumstances. 977 F.3d at 306 (pointing to the "well-settled principle that 'an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate'") (citation omitted).

*Ofori v. Fleming*, No. 7:20-CV-00345, 2021 WL 4462922, at *9 (W.D. Va. Sept. 29, 2021). Given Ofori's sworn allegations here about Mullins's statements tying the disciplinary charge to Ofori's protected activity, the court will not grant summary judgment in Mullins's favor as to this claim.  Again, if the court rules in Ofori's favor as to exhaustion, then this claim will be set for trial.

## IV.  CONCLUSION

As set forth above, plaintiff's motion to amend his complaint will be denied, defendant's motion to amend their answer will be granted, the first motion for summary judgment (as to Claims 10 and 18) will be granted, and the second motion for summary judgment will be granted in part (as to Claim 7) and denied in part (as to Claims 1 and 13).  The court also will refer the case to the assigned U.S. Magistrate Judge for further proceedings on exhaustion.

The court will set forth these rulings in an appropriate order.

Entered: March 11, 2022.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge